**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| JOSHUA DIMMIG, a single man, | No. CV-09-189-TUC-CKJ |
| Plaintiff, | |
| vs. | **ORDER** |
| PIMA COUNTY, *et al.*, | |
| Defendant. | |

Currently pending before this Court is Defendants' Motion for Summary Judgment [Doc. 78]. A response and reply have been filed, and oral argument was held on March 5, 2012. [Docs. 79, 82, 89]. For the reasons delineated below, Defendants' motion is granted.

**I.    FACTUAL BACKGROUND**[1]

On March 29, 2008, at approximately 4 a.m., the Pima County Sheriff's Department received a number of 911 calls regarding a disturbance in the vicinity of 10968 South Alley Mountain Drive. The 911 reports indicate that a male subject was yelling and screaming, going crazy, throwing rocks at a vehicle and at the windows of houses, and chasing someone

---

[1]Defendants' Statement of Facts were largely undisputed. Those facts which are deemed true, but objected to as irrelevant to determination of the pending motion, have been included for the purpose of providing background and were not considered as "material" facts for determination of the summary judgment motion.

1 on foot with a knife. Deputy Laura Ybarra was the first deputy to arrive on scene. Upon her
2 arrival, she saw the subject later identified as Plaintiff Joshua Dimmig, walking toward her
3 vehicle in a very aggressive manner, looking mad and yelling. Plaintiff walked past
4 Defendant Deputy Ybarra's vehicle, picked up a large rock, threw the rock at the police
5 vehicle, and hit it. Shortly thereafter, Defendant Deputy Ybarra saw that the subject had a
6 knife in his hand and saw him pull up his shirt and appear to be cutting himself. It was still
7 dark out, and Defendant Deputy Ybarra put her spotlight on the subject and directed him via
8 the PA system to put the knife down. The subject did not comply, but instead responded by
9 saying "fuck you, bitch: and "come over here, try to get me." Other officers arrived on
10 scene, including Defendant Deputy Steven Love and two border patrol agents. They
11 followed Plaintiff as he walked backwards facing them. They tried to talk Plaintiff into
12 dropping the knife, but he did not comply and responded by saying things like "just go ahead
13 and shoot me," "if you don't shoot me, I'm gonna fucking kill you guys," "I'm gonna stab
14 you guys" "I don't give a fuck." Based on supervisory direction via the radio, the deputies
15 implemented a plan where they would use a police vehicle for cover, and attempt to get close
16 enough to the armed subject to tase him.

17 Defendant Deputy McLeod arrived in his patrol car, and with Defendant Deputy
18 Ybarra in the front passenger seat, began driving the vehicle and providing lethal cover. The
19 patrol vehicle approached the subject at a very slow speed, 2 to 3 miles per hour, while
20 Defendant Deputy Love and the two border patrol agents walked alongside the vehicle.[2] As
21 the deputies approached the Plaintiff, he walked backwards facing them with the knife in his
22 hand, and continued to yell things like "kill me now," "if you don't fucking do it, I'm going
23 to kill you." The deputies saw a vehicle approach from the opposite direction and stop near
24 the subject. The deputies became immediately concerned that the subject might harm the

---

26 [2]Plaintiff objects to Defendant's estimated speed being driven as 2 to 5 miles per hour
27 as averred in Defendant Deputy Ybarra's affidavit. Defendant Deputy McLeod's affidavit
provides an estimated speed of between 2 and 3 miles per hour. For purposes of this motion
28 the Court will accept the narrower speed range.

- 2 -

1  driver and carjack the vehicle. Defendant Deputy McLeod was also concerned about the
2  Plaintiff potentially charging Defendant Deputy Ybarra who had the passenger door open,
3  and the potential of a crossfire situation if that happened from Defendant Deputy Love who
4  was on the left side of the vehicle with his weapon drawn.[3] Defendant Deputy McLeod had
5  the driver's door open, with his left foot outside the vehicle, his right foot operating the
6  accelerator and the brake, his left hand on the steering wheel, and his right hand on his gun
7  against his chest, ready to jump out.[4]

8        Within moments of the other vehicle stopping, Defendant Deputy Ybarra deployed
9  her taser, which hit the subject who fell to the ground. Defendant Deputy McLeod had
10 glanced back to check on Defendant Deputy Love's location, when he heard the taser deploy.
11 Defendant Deputy McLeod looked forward to see the subject fall to the ground in front of
12 the vehicle. He recalls trying to stop the vehicle and get it in park while at the same time
13 trying to holster his gun. Defendant Deputy McLeod remembers slamming on the brakes,

---

[3] Plaintiff objects based upon instructions from Sergeant Dominguez "that the third deputy would provide lethal cover, as one would be a taser and the other would be driving. I advise [sic] that it was okay if the vehicle was struck with rocks, as long as the deputies were behind some sort of cover. I advised that [Deputy Ybarra] try to corner the [Plaintiff] in order to prevent him from fleeing, and use the taser." Pl.'s Separate Statement of Facts ("SSOF") [Doc. 80] Exh. "1" at 56 ¶ 8. Sergeant Dominguez's instructions do not alter Defendant Deputy McLeod's position driving the vehicle which would result in his being caught in any crossfire between Plaintiff and Defendant Deputy Love.

Plaintiff further suggests that if Plaintiff had rushed Defendant Deputy Ybarra, that either she would have overpowered him or one of the Border Patrol Agents also present would have reached him first. Plaintiff's suggestion is mere speculation as to what might have happened and does not refute Defendant Deputy McLeod's concerns.

[4] Plaintiff "contests that Deputy McLeod was operating the accelerator of his vehicle at that time." Whether Defendant Deputy McLeod's foot was on the accelerator or the brake is somewhat without moment. It is undisputed that his right foot was in the car in the portion of the driver's compartment where the accelerator and brake are located. Defendant Deputy Ybarra stated that she could hear the engine hum when Defendant Deputy McLeod pressed on the gas pedal. Pl.'s SSOF, Exh. "2" [Doc. 80-2] at 24. Defendant Deputy Michael Love, however, opined that Defendant Deputy McLeod did not need his foot on the gas to maintain a walking speed in the patrol car. Pl.'s SSOF, Exh. "3" [Doc. 80-3] at 14.

and thinking that he had missed the brake, and as a result the vehicle continued to roll forward and over the top of the Plaintiff before the vehicle was stopped.[5] Plaintiff was stuck underneath the vehicle, and the officers quickly determined that it was not safe to back the vehicle up.[6] Defendant Deputy McLeod immediately retrieved the jack from the trunk of the vehicle and began jacking it up as fast as he could. Defendant Deputy McLeod jacked the vehicle up sufficiently so that the officers could pull Plaintiff out from underneath the vehicle. Once the officers were able to pull Plaintiff out, he received medical attention.

---

[5]Plaintiff disputes the accuracy of Deputy McLeod's recollection, stating that "after seeing the Plaintiff fall, he put on the brake and put the vehicle into Park." Pl.'s SSOF [Doc. 80] ¶ 19(A). Additionally Plaintiff avers that Defendant Deputy McLeod "stated that the Plaintiff was 'literally touching the front bumper of the patrol car when the taser was deployed.'" *Id.* at ¶ 19(B). Plaintiff relies on a Detail Incident Report dictated by M. Farraris reporting what Defendant Deputy McLeod stated. *See* Pl.'s SSOF, Exh. "1" [Doc. 80-1] at 45-8. M. Farraris's statement regarding what Defendant Deputy McLeod stated is inadmissable hearsay. *In re Oracle Corp. Securities Litigation*, 627 F.3d 376, 386 (9th Cir. 2010) ("A district court's ruling on a motion for summary judgment may only be based on admissible evidence.").

[6]Plaintiff acknowledges that he was stuck underneath the vehicle, but argues that he could have been pulled out prior to jacking up the vehicle. First he suggests that because he was skinny, this should have easily been accomplished. There is nothing in the record to support the conclusion that Plaintiff could have been pulled out prior to the vehicle being jacked up. Indeed, Deputy Defendant Love avers that officers attempted to pull Plaintiff out from under the vehicle prior to jacking it up, but were unsuccessful. Defs.' SOF [Doc. 77], Exh. "D" ¶ 6.
  Secondly, Plaintiff contests that Defendant Deputy McLeod "immediately" retrieved the jack from the vehicle's trunk. Relying on statements Deputy Watkins made to Deputy Farraris, Plaintiff urges that Deputy Watkins saw everyone huddled around the driver front side of the vehicle, and "when she started walking up to the vehicle, she saw someone underneath the car who was screaming. As she was walking up, she saw who she believed to be Deputy McLeod go to the trunk of his vehicle and get a jack." Pl.'s SSOF [Doc. 80] ¶21(A). Plaintiff further avers that this statement contradicts Defendants recitation. Plaintiff is incorrect. The record shows that the officers assessed the situation, attempted to extricate Plaintiff and when that was unsuccessful Defendant Deputy McLeod retrieved the jack and began jacking up the car "as fast as he could." Nothing about Deputy Watkins' statements contradicts this scenario.

- 4 -

Plaintiff sustained burns and abrasions from the vehicle. Plaintiff's expert witness, Joseph Godoy, opines that this incident should not have taken place.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 255 (1986), "there is no genuine issue as to any material fact and [] the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Thus, factual disputes that have no bearing on the outcome of a suit are irrelevant to the consideration of a motion for summary judgment. *Id.* In order to withstand a motion for summary judgment, the nonmoving party must show "specific facts showing that there is a genuine issue for trial," *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Moreover, a "mere scintilla of evidence" does not preclude the entry of summary judgment. *Anderson*, 477 U.S. at 252. The United States Supreme Court also recognized that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007).

## III.   ANALYSIS

"In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989) (citations omitted). "Where . . . [an] excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure

- 5 -

1  in their persons . . . against unreasonable . . . seizures' of the person." *Id.*, 109 S.Ct. at 1871.
2  "[*A*]*ll* claims that law enforcement officers have used excessive force – deadly or not – in the
3  course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed
4  under the Fourth Amendment and its 'reasonableness' standard, rather than under a
5  'substantive due process' approach." *Id.* at 395, 109 S.Ct. at 1871 (emphasis in original).
6  "Because the Fourth Amendment provides an explicit textual source of constitutional
7  protection against this sort of physically intrusive governmental conduct, that Amendment,
8  not the more generalized notion of 'substantive due process,' must be the guide for analyzing
9  these claims." *Id.*

10  Here, Plaintiff alleges Defendants used excessive force in violation of his "rights
11  under the 4th and 14th Amendments of the United States Constitution and violated [his] civil
12  rights under 42 U.S.C. § 1983." Pl.'s Amended Compl. [Doc. 40] ¶ 17. Section 1983 "'is
13  not itself a source of substantive rights,' but merely provides 'a method for vindicating
14  federal rights elsewhere conferred.'" *Graham*, 490 U.S. at 393-94, 109 S.Ct. at 1870 (quoting
15  *Baker v. McCollan*, 443 U.S. 137, 144 n.3, 99 S.Ct. 2689, 2694 n.3, 61 L.Ed.2d 433 (1979)).
16  Defendants were in the process of arresting Plaintiff when the use of force occurred. As
17  such, this Court shall analyze the case under the Fourth Amendment standard and not a
18  substantive due process approach.

### A. *Fourth Amendment Violation by Deputy McLeod*

Defendant asserts that Defendant Deputy McLeod accidentally ran over Plaintiff, and as such there was no Fourth Amendment violation. Plaintiff urges that Defendant Deputy McLeod's failure to hit the brakes and the possibility that he may have hit the accelerator demonstrates that Defendant Deputy McLeod acted intentionally. The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

- 6 -

1  U.S. Const. amend. IV.  "'[W]henever an officer restrains the freedom of a person to walk
2  away, he has seized that person.'" *Brower v. County of Inyo*, 489 U.S. 593, 595, 109 S.Ct.
3  1378, 1380, 103 L.Ed.2d 628 (1989) (quoting *Tennessee v. Garner*, 471 U.S. 1, 7, 105 S.Ct.
4  1694, 1699, 85 L.Ed.2d 1 (1985)).  "'[O]nce a seizure has occurred, it continues throughout
5  the time the arrestee is in the custody of the arresting officers.'" *Torres v. City of Madera*,
6  524 F.3d 1053, 1056 (9th Cir. 2008) (*Torres I*) (quoting *Robins v. Harum*, 773 F.2d 1004,
7  1010 (9th Cir. 1985)).  The Fourth Amendment, therefore, "addresses 'misuse of power,' .
8  . . not the accidental effects of otherwise lawful government conduct." *Brower*, 489 U.S. at
9  596, 109 S.Ct. at 1381 (internal citations omitted).

10  "Determining whether the force used to effect a particular seizure is 'reasonable'
11  under the Fourth Amendment requires a careful balancing of 'the nature and quality of the
12  intrusion on the individual's Fourth Amendment interests' against the countervailing
13  governmental interests at stake." *Graham*, 490 U.S. at 396, 109 S.Ct. at 1871 (citations
14  omitted).  The reasonableness test of the Fourth Amendment "requires careful attention to
15  the facts and circumstances of each particular case, including the severity of the crime at
16  issue, whether the suspect poses an immediate threat to the safety of the officers or to others,
17  and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*, 109
18  S.Ct. at 1872 (citations omitted).  This inquiry is an objective test: "whether the officers'
19  actions are 'objectively reasonable' in light of the facts and circumstances confronting them,
20  without regard to their underlying intent or motivation." *Id.*  This reasonableness analysis
21  applies to honest mistakes, as well.  *See Torres I*, 524 F.3d at 1056 (whether an officer's
22  mistake in drawing her Glock rather than her Taser was objectively reasonable).

23  It is undisputed that Plaintiff was threatening the police officers and threatening harm
24  to himself and was possibly a risk to other innocent people.  It is further undisputed that
25  Defendant Deputy McLeod was in control of the vehicle and using it to provide cover for
26  Defendant Deputy Ybarra, as she attempted to use her taser on Plaintiff.  Once Defendant
27  Deputy Ybarra subdued the Plaintiff, the patrol car continued to roll forward and ran over
28  Plaintiff.  It is unclear whether Plaintiff was at the hood of the car or a few feet away from

it at the time that he was tased. Defendant Deputy McLeod avers that this was an accident. Plaintiff asserts that this was an intentional act. Plaintiff's expert witness, Joseph Godoy, opines as follows:

> 3. Based on [his] training and experience in law enforcement, and upon review of the statements made by Deputy McLeod, the operation of his patrol car in a manner in which he unilaterally determined was necessary to provide lethal cover, Deputy McLeod disregarded the orders of Sgt. Dominguez, which required on deputy to drive the vehicle, one to provide non-lethal cover, and the third deputy to provide lethal cover. Exhibit A
>
> 4. Absent some mechanical malfunction with the vehicle, had Deputy McLeod followed the order of Sgt. Dominguez', Deputy McLeod would have been able to safely control his vehicle.
>
> 5. Based on [his] training and experience in law enforcement, and the operation of department vehicles; driving with one foot outside of the vehicle, the driver holding a service weapon with the right hand and steering with the left hand, is unsafe, does not comply with standard law enforcement procedures, and would not be authorized by a supervisor. Operation of a vehicle in this manner is inherently dangerous.

Pl.'s SSOF [Doc. 80-4], Exh. 6 at ¶ 3-5.

If Defendant Deputy McLeod's mistake was a reasonable one, then there cannot be liability under the Fourth Amendment. "Because the reasonableness standard 'nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, we have held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly.'" *Torres v. City of Madera*, 648 F.3d 1119, 1125 (9th Cir. 2011) (*Torres II*) (quoting *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002)). "Conclusory, speculative testimony in affidavits and moving papers[, however,] is insufficient to raise genuine issues of fact and defeat summary judgment." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

Contrary to Plaintiff's expert witness's affidavit, the record indicates that Defendant Deputy McLeod followed the orders of Sergeant Dominguez rather than disregard them. Def.'s SOF [Doc. 77], Exh. "C" at ¶¶ 4-5. Moreover, contrary to Plaintiff's expert affidavit, this incident did occur absent a mechanical malfunction of the vehicle. *See id.* Finally, Plaintiff's expert opines that the method employed "would not be authorized by a supervisor . . . [and] is inherently dangerous." Pl.'s SSOF [Doc. 80-4], Exh. 6 at ¶ 5. "[S]uch [a]

- 8 -

conclusory assertion[] [is] insufficient to avoid summary judgment." *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1252 (9th Cir. 2010). The evidence before the Court demonstrates that Defendant Deputy McLeod followed the instructions of his supervisor. The factual record is undisputed, and this was certainly an unfortunate incident. "A summary judgment motion[, however,] cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). In considering the record as a whole, "a rational trier of fact could not find in favor of the party opposing the [summary judgment] motion[,]" because there is no genuine issue of material fact. *Id.* Accordingly, summary judgment in favor of Defendant McLeod is appropriate.

### *B. Fourth Amendment Violation by Deputies Ybarra and Love*

Defendant asserts that because Deputies Ybarra and Love did not personally participate in the car rolling over Plaintiff, liability should not attach. Plaintiff argues that they should have pulled him out from under the car instead of waiting for the car to be jacked up. "Pursuant to a long line of civil cases, police officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen." *U.S. v. Koon*, 34 F.3d 1416, 1447 n. 25 (9th Cir. 1994), *rev'd on other grounds by Koon v. U.S.*, 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). "Thus an officer who failed to intercede when his colleagues were depriving a victim of his Fourth Amendment right to be free from unreasonable force in the course of an arrest would like his colleagues, be responsible for subjecting the victim to a deprivation of his Fourth Amendment rights." *Id.* Such is not the case here. Both Defendant Deputies Ybarra and Love assisted in removing Plaintiff from underneath the car. Indeed, Defendant Deputy Love avers that he attempted to pull Plaintiff out, but was unsuccessful prior to Defendant Deputy McLeod jacking up the vehicle. [7]

---

[7] Plaintiff argues that this statement was missing from the initial interview of Defendant Deputy Love suggesting that there was never an attempt to extricate him prior to use of the jack; however, Plaintiff chose not to depose Defendant Deputy Love which leaves a record contrary to Plaintiff's argument.

- 9 -

Defendant Deputy Ybarra was ultimately one of the officers who extricated Plaintiff from underneath the vehicle once it was lifted. The record is devoid of evidence to suggest that either Deputy Ybarra or Love acquiesced or otherwise participated in any violation of Plaintiff's Fourth Amendment rights.[8] As such, summary judgment in favor of Deputies Ybarra and Love is appropriate.

## IV.    CONCLUSION

Accordingly, IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment [Doc. 78] is GRANTED.

DATED this 29th day of March, 2012.

Cindy K. Jorgenson
United States District Judge

---

[8] Plaintiff urges that Defendant Deputies Ybarra and Love should have interceded to prevent Defendant Deputy Love from operating the vehicle in an unsafe manner. Yet at the same time, Plaintiff asserts that Defendant Deputy McLeod despite having concerns regarding his fellow officers and a potential crossfire situation, was only assigned to drive the vehicle and should have tended only to that job. Plaintiff cannot have it both ways.

- 10 -